The case this morning is D.B. v. Poston, I guess it is. Ms. Watson, good to have you here. Good morning, Your Honor. Good to be here. May it please the Court, I'm Susan Watson with Texas Rio Grande Legal Aid, appearing here today on behalf of R.M.B., a minor child who seeks release from unlawful federal detention by way of writ of habeas corpus. What Thomas Jefferson said in 1798 remains true even today. The laws of the land, administered by upright judges, would protect you from every exercise of power unauthorized by the Constitution of the United States. The habeas corpus secures every man here, alien or citizen, against everything which is not law, whatever shape it may assume. The great writ protects us all against government infringement upon individual liberty that is not authorized by statute or is inconsistent with the Constitution. As Jefferson intimated, proper... 2241, the great writ? I'm sorry, Your Honor? Is section 2241 the great writ? Yes, Your Honor. It is? Okay. As Jefferson intimated, proper administration of the laws and rules matter. When a person's liberty interests are at stake, adherence to procedural rules and substantive law is of paramount importance. Well, let's talk about that a minute. The statute that is at issue in this case as to whether or not the writ is issued is 6 U.S.C. 279A. That's correct, Your Honor. Now, in my view, there are three and a half parts to that. Has no lawful immigration status in the United States. That's true for your client. Has not maintained age of 18. That's true for your client. There is no parent or legal guardian in the United States. That's not true as to your client. But as to this half part, no parent or legal guardian in the United States is available to provide care in physical custody. I assume from reading the other side's position that they're relying on that AC2 provision. Well, Your Honor is referring to the statutory definition of what an unaccompanied alien child is, which determines whether the Office of Refugee Resettlement has any authority to detain the child, whether in proceedings or not. The statute that grants detention authority to ORR is 6 U.S.C. 279A, which prescribes the limit of detention authority under U.S. immigration law. And then it goes on to decide, as Judge Floyd indicated, which children are subject to ORR custody and which children should be subject to ICE custody, Immigration and Customs Enforcement. With her unaccompanied alien child, they go to the HHS, right? Correct, Your Honor. During the pendency of their immigration. That's Secretary Burwell. That's correct, Your Honor. She's the custodian under the statute. She is. She's the custodian. That's what the statute says. She goes to the Secretary. She has the responsibility of providing care and custody for children. So she gets the unaccompanied alien children. While they are in immigration. And so she's the guardian, basically, in their wards of the Secretary of HHS. Well, I would urge… For unaccompanied alien children. And you're saying, well, your fellow is not an unaccompanied alien child, right? You want us to review that and determine that he's not an unaccompanied alien child or that he didn't get to face a process to determine whether he was or not. And so you're entitled to some relief under the habeas corpus statute. Well, there's two issues and two parts of that question, Your Honor. Yes, absolutely. We are asking for habeas review. One of the issues that should be reviewed on habeas is whether he meets the definition of an unaccompanied alien child. And that was determined by the Department of Homeland Security. When they picked him up, they decided he was an unaccompanied alien child. That's correct, Your Honor. So when they made that determination, under the law, they had to turn him over to another agency of government, and that was the Secretary of HHS. And they delivered him to the Secretary of HHS. And that's where he is now. But just because Border… Is that not correct? That's how it happened. I'm just laying groundwork. That's how it happened, Your Honor. This is not an easy proposition or an easy case you all bring up here. I'll agree with that. But some of these facts we don't have to worry about. I don't think we need to dispute. I think we can probably settle on some of them. Is anything I said wrong? It's not wrong, but I would say it's incomplete. All right. It might be incomplete. All right. What part's incomplete? Part's incomplete is that the Border Patrol knew that his mother was on her way to take… His mother is in the United States, like Judge Floyd pointed out. Correct. She, under that, what, the third part… Correct. She is present and available. She actually lives in the United States. But he had left the home some months before and was down on the border of Mexico, smuggling people in the United States and engaging in criminal activity. He even said he killed somebody. Those are the allegations. Fourteen years old. But they're talking about what he said. He said, I shot somebody. Interestingly enough. In a initiation in connection with a gang down there. But anyway, those are facts, too. Interestingly enough, Your Honor, he's never… His mother was on the way and he tried to call her and she tried to call him and he hung up on her. He spoke with his mother. So they decide he's an unaccompanied alien child because his parent, even though she was in the United States, was not available. Not available. I think that's what Judge Floyd, maybe that's the third and a half element. That's correct. But she was not available so they decided he was an unaccompanied alien child and that triggered the proposition that they had to turn him over as an unaccompanied alien child to the Secretary of HHS, Sylvia Burwell. And that's where he is now. That's correct, Your Honor. But just because the Border Patrol decided that doesn't mean that it was a correct decision and doesn't mean that it's… What do you want us to do? I want him to be ordered, released from federal detention… Where would he go? To the custody of his natural mother. You want him to go in custody of his mother? Correct, Your Honor. Okay. Her rights under Texas law have not been diminished. All right. Let's just assume for a minute that there was an error by the Border Patrol when they first decided he was an unaccompanied alien child and they should have done something else to hook him up with his mother. Let's just assume that. But now he's in the custody of this Office of Refugee Resettlement or whatever it is. Right, Your Honor. So, since then, they've made a determination that the mother's not capable of providing a home. So, in effect, there is no available parent. All right? Now, that's what they've decided. Isn't that right? They've decided that they don't believe that the mother is suitable. Right. But they only get to make that decision while they have lawful custody of this child. Right. I know that's your position. Let's just hang on for a second. Okay. So, what we face now is that you've got this agency that's directed by statute to have custody of the minor child, the minor alien child, and they've made a determination that under that first part of the statute that Judge Floyd referred to, that, in effect, there isn't a parent available because it's not a competent parent for whatever reason. So, in that circumstance, why would you be entitled to relief? Because the authority to make that decision is contingent on and must be read consistent with and subject to ORR's general detention authority authorized by Congress, which is expressly and clearly limited by the plain language of statute under U.S. immigration law. And under U.S. immigration law, no federal agency has the authority to keep an alien in detention once proceedings have terminated. Tell us what statute specifically says that ORR's authority to hold the child terminates completely upon the end of termination of immigration proceedings. So, 6 U.S.C. 279A of the Homeland Security Act is the general delegation of authority granting a detention authority to the Office of Refugee Resettlement, transferring from the former INS that authority to detain unaccompanied alien children to the Office of Refugee Resettlement. As the government itself concedes immigration law, the law under which ORR possesses its detention authority requires, allows for an immigrant to be taken into custody only so long as that immigrant is in proceedings. And once an immigration judge has terminated those proceedings, which happened in this child's case last April. Are you going to point us to some subsection of 279 that you say says that? 279A, Your Honor. What page is that on? I've got your brief in front of me. I believe the entire statute is in the back. It goes A1 to A4 in the appendix to your brief. What page are you referring to? I believe it is the first. I can check with my eyes. A1? I believe it's A1. A1, A1, A1. No, that's the addendum. A2, 279. All right, I'm reading 279A. What language in there are you saying that the transfer to ORR terminates? I'm going to see if I can remember the language of the statute off the top of my head. There shall be transferred from the immigration to the Office of Refugee Resettlement. That's the transfer of functions. Correct. That's the general transfer of functions. But the transfer of the child after they're determined to be an alien, what section is that? Precisely, the function that is being transferred is precisely this function, the function to detain, to assume custody over a child who is in removal proceedings. That used to be done by the INS. We agree. We understand that. What I'm asking you for is, is there some plain language we're going to find in this statute that says this transfer under 279A ends as soon as whatever immigration proceeding is terminated? That's what I'm looking for. The section 236.1B. 236? This is in the Code of Federal Regulations. So the statute instructs you to look at the immigration laws of the United States. All right. And in 8 CFR, which is the Immigration Regulations, 236.1B. Is that regulation in your papers? Yes, Your Honor. What page is that on? While she's looking. While she's looking. Is it your contention that since the Border Patrol knew when they picked that child up that his mother was available, they just misrepresented it? And that's how this case got out of control? Absolutely. I mean, I'm not, we can't dispute that the child would have been subject to some form of detention. Not by ORR. ICE has the authority to detain accompanied children. They didn't do that. But they didn't do that. Because they don't want, I don't know why they didn't do that. But they knew that his mother was on the way. They knew that both the child and the mother had received relief under the Violence Against Women Act. And they knew, but they knew that she was going to be able to quickly take custody in three hours versus the three days it took them to transfer him to ORR. Determination of fact, right? Correct, Your Honor. But it's contrary to. So you're saying we have a power to review that determination of fact, which was a year or two ago? You have the authority to review. Under Section 2241, the Great Writ Statute. You have the authority to review de novo questions of statutory interpretation. I think your assistant found the answer. Oh, good. This is the regulations you're talking about? This is the regulations, Your Honor. There's no bait stamp on the page. It's on page 442, beginning on page 442 of the addendum, which is a. This is at the back of your brief. Yes, Your Honor. The opening of A-17. A-17, yeah. Yes, Your Honor. A number after it. All right, yeah. 235-11 is A-17. Right, Your Honor. No, but the bottom right starts apprehension and detention of innocent. So it starts on 441. 440, where are you now? Okay, so page, what should be labeled page A-17 is actually the applicable regulations that. Start the next page. Correct. That has a copy of the Code of Federal Regulations. 236.1. 236.1B, warrant of arrest at the time of issuance of the notice to appear or any time thereafter and up to the time removal proceedings are, I'm sorry, are completed. The respondent may be arrested and taken into custody. His proceedings are completed. No federal agency has authority to retain detention of this child. So was he detained? Was he arrested under a warrant? He was issued a notice to appear in immigration court which constitutes the warrant in the immigration context. And by operation of law, termination of proceedings cancels that underlying warrant. There is no warrant for his federal detention. And as such, ORR, and I have to take a slight issue with you, Judge King, that Secretary Burwell and the office are not a guardian in the classic family law sense of the word to make a guardianship determination or a formal child custody determination. They have an obligation to take care of these children. Just as a Bureau of Prisons warden. I'm using guardian and warden. That makes sense to me. Right. They do have that obligation, Your Honor. They have to feed them and take care of them. Exactly. Just like a prison warden has the obligation to care for inmates. But only while that inmate is serving the sentence. I believe my time is up. Your red light's on. My red light has been on. Thank you, Your Honors. We've asked you a lot of questions. And you saved some time. All right. Now, Ms. Gattell, did I pronounce that wrong? Gattell. Glad to have you here. Thank you. You're representing all the respondents? That is correct. Good morning, Your Honors. Mr. Poston doesn't have this file anymore. That's correct. He has been transferred to California. May it please the Court, Kate Gattell on behalf of the respondents. This habeas corpus case concerns intersection between immigration law and the law governing the Department of Health and Human Services mandate to provide for the care and custody of unaccompanied alien children in the United States. The law mandates that HHS's Office of Refugee Resettlement continue to provide that care and custody until the child is no longer an unaccompanied alien child or until a suitable sponsor has been provided for the child's physical and mental well-being. In this case, you would say the district court was correct. There's no writ to be issued under 2241. That is correct. So how does someone like the child in this circumstance get review of the determination that they are an unaccompanied alien child, that they don't have an available parent, prior to the time they attain age 18 and are released? How do they get review of that, or is it reviewable? Well, the administrative process that a sponsor, including a parent, can go through was utilized here. They can file for family reunification, submit a packet, go through the process, and seek review of that. Judicial review is not appropriate and habeas. All this court can look at is whether HHS and ORR are following the law, following the U.S. statutes and Constitution. Let's just assume for a second that they don't get 2241 relief. Is there some other relief that they get? I mean, is there judicial review of any of these agency decisions? We suggest that there could be judicial review under the effect of HHS's determination, factual determination, not to release R&B to his mother. Well, let's assume you're wrong and the writ can be used in this case. Under 6 U.S.C. 279A, where does your jurisdiction arise? Under the plain language of the statute. The statute transfers the functions to provide care and custody of the child under 6 U.S.C. 279A. Then if you look at 8 U.S.C. 1232, that statute provides that HHS must maintain the care and custody of the child until a suitable sponsor is found. But my point is, which I couldn't get the opposing counsel to really tell me, ORR has to have some jurisdictional basis. The way they get that is by meeting the definition of 6 U.S.C. 279. So how do you meet that definition? Let me just take it. I think we were arguing about C, little I or C, little II. The other two are patently clear. You lose all. So how do you get there with the plain language? With the plain language of 279G2C, it says, with respect to whom there's no parent or legal guardian in the United States, or no parent or legal guardian in the United States is available to provide care and physical custody. That last point, I assume that's what you're saying. Yes. And the concern here is the ability to provide for RMB's care. Now, HHS did an exhaustive analysis of – Did you all make that determination? That he was an unaccompanied alien child under that ORR provision? HHS didn't make a new determination once CD transferred RMB to its care. However, the analysis – Is that answer yes or no? No, HHS did not make that determination. Have you made a determination of whether or not he's an unaccompanied alien child? Well, as a part of the determination of whether to release RMB to his mother, that determination was essentially the same determination that's made in 279G2C. And so far as HHS determined that the mother was not an appropriate person to release RMB to, accordingly they determined that there was not an available parent here in the United States. So was the answer to my question yes or no? Could you repeat the question? Well, I'm just trying to find out. The determination that he was an unaccompanied alien child was initially made out there on the Mexican border by the border control people who were part of the Department of Homeland Security. And then he was transferred to DHS or HHS, whatever it's called. Correct. Ms. Burwell's outfit. He was transferred there. And you all say and you cite 8 U.S.C. 1232-3A as the reason you still have him because if he's an unaccompanied child, he can't be placed under that provision. That's a statute of the United States passed by Congress. He can't be placed with a person or entity unless the Secretary of Health and Human Services makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being. That's the part that you all looked at, but after you got him, you've looked at that and you did a home study and you studied her and him and everybody and you decided you couldn't turn him over because he's dangerous and other things. He can't take care of him and he's a danger to himself and to the public, among other things. Is that fair or am I wrong? That's a fair assessment. Did you all review the determination that he was an unaccompanied alien child? Was it reviewed de novo or for abuse of discretion or reviewed at all by HHS? HHS did not review CBP's determination that the child was an unaccompanied alien. You accepted that proposition. HHS accepted that proposition. The DHS made that ruling or made that determination and you all have accepted it all the way through. That is correct, but the crux of what is... Judge Kacharis, Judge Kacharis, who obviously did a lot of work in this case, he said at page nine of his opinion that the mother contested that, appealed it or whatever, and it was reviewed and then she asked for reconsideration and it was reviewed again. Is that right or wrong? What happened before HHS is that she sought RMB's release to her. As a part of that assessment that HHS undertook in 2014, they looked at whether she was capable to provide care. To be exact about it, these are two different standards but are essentially the same thing, such that when HHS made the determination... alien child determination that you first got him, and you first got him because the Border Patrol picked him up, no mother, there he goes. But now you're holding him, tell me if I'm wrong, now you're holding him not because there isn't a mother because there obviously is, but the mother's unfit. The mother... Colloquially. Yes, that is correct, but it bears... You're now holding him under two little eyes, not one little eye. Well, he was determined to be an unaccompanied alien child under two little eyes by CBP. Of 279 you're talking about? Yes. But you all didn't determine that the mother was unfit. You all have used that term, that the mother's unfit? We do not use that term. HHS looks at whether the sponsor, including a parent, can provide for the child. But you looked at both her situation and his. Exactly. And that's the important point in this case, is that I think it's without dispute that R&B has a very high level of needs due to his background, psychological and social issues. And HHS just determined that the mother could not provide the structure and the supervision that he needs. And so it's sort of a totality of the circumstances analysis when they decided not to release R&B to her care. But the important point is that he is in ORR custody currently under 1232. However, when they did the suitability analysis, it is essentially the same question. Can the mother provide care? The same question that is asked under 6 U.S.C. 279G. So HHS's position is that she can take care. So by determining he couldn't release him to the mother, you had to determine again that he was an unaccompanied alien child. Exactly. So now you're saying you did determine he was an unaccompanied alien child. I'm trying to be exact about it, that it was technically a different standard, but that it's an overlapping standard such that because they found that the mother was not able to provide the care. Is that documented in writing in this record somewhere, that you all determined it again that he was an unaccompanied alien child when you made your ruling under 1232, three safety and suitability assessments in general that says what you have to do? There's two letters from HHS at, I believe it's page 88 and page 90 and 91. In the second letter from Acting Secretary, I believe he talks about, he responds to RMB's attorney's assertions that he's no longer a UAC due to his removal. Is that the denial of the request for reconsideration? That's correct. Which is cited on, that's why I refer on page 9 of Judge Kacharis' opinion, where they on June 10, 2015, the Acting Assistant Secretary for Children and Families denied the request for reconsideration. There had been a denial of it first, her request, and then she asked for reconsideration. And that's where you basically plant your feet, as Judge Kacharis did, on the due process issue. That's correct. That there was enough process for the whole thing. And he comes back on page 34 and talks about that. Furthermore, one point of clarification also on the process point, in Pellant's reply brief, she suggests that perhaps there's new information about her home being suitable for RMB. She can reapply through the family reunification process at any time and ORR will reevaluate whether her home is now suitable for RMB. And also, again, look at how RMB is doing and determine whether it's a suitable placement. That's not what the statute says. It says available. It doesn't say suitable to provide care and physical custody. So at the point in time that the Border Patrol turned the child over to ORR, ORR could not meet this statutory definition as it is written. Well, Pellant's position is that the court, sitting in habeas, should not look back at what CBP did three years ago because all that the court should look at is the legal authority for RMB's current detention. And the legal authority for his current custody is found at 1232. And so, furthermore, there is evidence in the record. Does it make a difference that the Department of Homeland Security, the customs people, are not parties here? It does make a difference. First of all, this argument wasn't part of it. The parties here, the parties are the Secretary Burwell and that other fellow, but they're the Health and Human Services people. They're the ones that had him. And the arguments regarding what CBP did three years ago were not raised before the district court. So they are waived, and CBP did not have, Customs and Border Protection did not have an opportunity to present arguments in their defense before the district court. Furthermore, they've never been named as a party, and they shouldn't be named as a party because the court lacks jurisdiction over reviewing their determination that he's USC. Let's change the facts a little bit so we can kind of conceptually, somebody's got to write this, and so there's an initial conceptual principle as to whether or not habeas relief, or 2241 relief, is available at all in any of these circumstances. So if you change the facts, and they were that mother and child walk down the street, mother goes into the store to get the child a drink and tells the child, have a seat on the bench. While he's sitting on the bench, the immigration folks come along, do an alien child, yes. No mother. They pick him up, send him off to ORR. The mother's available. Mother was named Mother of the Year. So in that circumstance, you're holding the child. Is habeas relief available? Well, first of all, those aren't the facts of this case. We know that. We're trying to figure out what the basic underlying principle here is on, is habeas relief available? And if so, what are the circumstances that you establish a legal principle to make that determination? So in that circumstance, do you believe habeas relief is available or not? In that circumstance where the child has been transferred to ORR, erroneously, the mother, habeas is not available. The mother could do family reunification and have the child released through the family reunification process. To the extent that the mother would be challenging any sort of determination by HHS that she's not the mother, then due to legal or constitutional issue, then she could potentially have habeas relief. But it sounds like just a factual determination that she would be challenging, and therefore the appropriate course would be to go through the family reunification process. So as I'm understanding it, the government's position is that under Section 279, whenever there is an unaccompanied alien child, that there is no habeas relief, at least for a suit brought in the name of the child? That's the government's position, yes. Unless it's a legal or constitutional error. Wasn't that Judge Floyd's question? Yeah, what's constitutional about illegally detaining? At the point the Border Patrol turns the child over, you do not have the statutory authority to hold that child. Well, first of all, I think that premise is somewhat arguable, considering the facts that the CBP agents knew at the time, which was that he had run away from home, that he was involved in a smuggling ring, that he was encountered at the market. What you all said was he is unaccompanied. The first part of that, unaccompanied alien child, he's unaccompanied. Right now, what do you do if you get somebody who turns out he's not an alien? What do you do with them then? Well, then they would be released, yes. What if you get somebody who's not a child? He comes in, he has a birth certificate, and he shows he's 18 and a half. What do you do then? Now, under the statute… Who do you turn him over to? Under the statute, HHS is actually statutorily required to redetermine the age question, unlike the other HHS. So when age is by statute, they must redetermine. Okay, but by statute, you don't have to redetermine the unaccompanied aspect of it? Not by statute, no. So those three terms aren't treated the same? They are not, no. How about the alienage? The alienage, once again, there's deference to the immigration agencies. Deference to? To DHS, CBP, ICE. DHS determination of alienage, or whether they're accompanied or not, we have to give deference to it. And it's reviewed for abuse of discretion if it's reviewed at all? Our position is that it's not reviewed at all. I thought Judge Gutierrez said it was a discretionary call, and you think he was wrong? Well, the government's position is that the court cannot review CBP's determination of UAC. First of all, it happened three years ago, and so to review it at this point would essentially be an advisory opinion. And at this point, once the child is transferred to HHS, the detention authority shifts to 1232, and therefore the court should look at it. You have to look at it under 1232 instead of 279A. Yes, the government's position. 279A is by the boards, except to the extent that you go back and pull it through if you want to to see whether he was accompanied or not. Yeah, I believe that's the yes. I think to the extent that I understood that question. Well, what do you want us to do today? I bet you all have a lot of unaccompanied children in the custody of the Secretary of AGW and ORR. We do have a lot of children in the custody of HHS, but I would like to point out, I would like to point out, though, that the circumstances of R&B are extremely unique, such that, first of all, at the termination of his removal proceedings, he neither had status nor did he have a removal order. Most kids that go through removal proceedings will have a definitive result one way or another. So if they get a removal order, HHS will work with their home country to repatriate them, or if they get legal status, HHS will move to quickly move them out of ORR custody. Unfortunately, R&B's case is a unique one in that he has deferred action status due to this legal wrinkle. The other thing that we want to point out, too, is that the fact that he's in a secure facility, that's a very rare occurrence. There are not many kids in this high-level secure facility. What do you want us to do with this case? We would like the Fourth Circuit to affirm the district courts and across the board. Well, assume that the mother is an unsuitable sponsor. Does ORR's authority end when R&B turns 18? It does. And what if you don't turn him loose? What kind of relief can he get? Well, we recognize that HHS has no authority to hold him after he's 18, so at that point he would be released to his mother. Let's say that you do, and you determine that Judge King had asked you, and you determined that he's 17. Well, then he's got a competing birth certificate from Mexico that says he's 19. Is he entitled to bring a habeas proceeding at that point? I mean, if you want to affirm she wants it reversed, we've got to come up with some principles on how to determine this case, and you all aren't helping us, but so much. Well, if there's definitive evidence. You'd have to have some kind of proceeding to decide that, if you had two competing birth certificates. Well, in the statute. It would have to be some kind of a trial or maybe a habeas corpus. I mean, here you all agreed to do this thing under, I think on this record, you agreed to do it under 2243, Section 2243, and which on the face of it makes it a trial to the court, right? The court issued a show cause order, and you all made a record. You had a trial to the court. He refers to it one time as like a summary judgment, but it's not. Summary judgments, you've got to look at the facts, and the favor is one side or the other. In that kind of a setting, what he had here, I think, was a trial to the court, and so we give deference to that. We give deference to a ruling by a court that's trying a case, and in a habeas corpus thing, the findings of fact are reviewed for clear error, and it's like a verdict. It's just like a verdict, what Judge Kuchera said. But what are you going to do when he gets to be 18 and he's still dangerous? Now, you haven't answered that part. We've got law here that the prison director, in certain situations, people serve their sentences, and it doesn't contravene due process for them to hold them. And when they're dangerous to the public, they can't just turn them out on the street. They're going to hurt somebody. We've got cases like that, and we've ruled the other way, try to help them out and get them out, and the Supreme Court's reversed it, sent them back, right, down there at Butner. You can't turn them loose if they're dangerous. What are you going to do with this fellow when he's 18 and he's still dangerous? Well, HHS's position is that they would not have authority to continue to detain him. Maybe you don't. What are you going to do with him? HHS would most likely turn him over to his mother. He's got to protect the public. You've got to protect him and the public. It says here right there in that statute you're supposed to take that into account. Anyway, I think you all have briefed this thing enough. Are there any other issues here? If we're going to have to make some rulings here, we want it to be right. I believe we've briefed this enough, but if there's any issues that the court would like us to. . . Do you think the due process aspect of it is fully briefed? I do believe the due process aspect of it is fully briefed, but if the court would like additional briefing on that, we could provide that. In sum, the HHS just would like to remind the court that this is an extremely unusual case, factually and legally, and to ask the court not to make any. . . Now, they think it's simple. They asked us to decide it without oral argument. They said it was so simple we didn't even need an oral argument. We just should grant him relief. We don't believe it's simple. Well, I think it's hard. And I think it's important. And these laws are designed to protect vulnerable children, and so in sum, HHS asks the court not to make dramatic new laws that would affect HHS's ability to keep children in their custody and to provide them care, because these are vulnerable children that HHS is protecting. Thank you. Thank you very much, Ms. Watson. We really appreciate it. Ms. Gretel, I'm sorry. Ms. Watson is going to argue some more. Thank you, ma'am. My father, who's here today, would, I think, tell the judge that I never stopped arguing. Give us some more time. You can finish this thing for us. I'm hoping that I can. . . You can explain it all to us. Let me take a shot at it. I'm hoping that I can maybe simplify and clarify part of why I think this is a simple case. In this court, just recently, in fact, Judge King, you were part of the Ojo v. Lynch opinion that puts this court on the path that the district court ignored, and that is that judicial review of statute begins and ends with the text of the statute if it is unambiguous. And the text here is unambiguous. Which statute are you talking about? Okay, that's what I was going to clarify. So if we look to 279. . . 279. Correct. Okay. A tells the court the scope of ORR's authority, U.S. immigration law. And 279G2 tells the court who ORR can detain, an unaccompanied alien child. So what 279 says, in its plain language, on its face, is that ORR has the authority from Congress, consistent with U.S. immigration law, to detain children who meet the statutory definition of an unaccompanied alien child. That's not exactly what I read at least A1 to say. It just says develop policies and procedures to ensure that unaccompanied alien children are safely repatriated. A says, and I'm reading now on page A2 of the addendum, there are transferred to . . . Wait a minute, wait a minute. What section? I'm looking at the statute. Tell me which subsection we're dealing with. I'm in 279A, 6 U.S.C. 279A. Functions under the immigration laws. Right. With respect to the care of unaccompanied alien children that were vested by statute in, or performed by, the former INS. Right? So how does that help you out? So that means that ORR, what is their detention authority? What is their function? Their function is to provide care and custody under U.S. immigration law of unaccompanied children. Who are unaccompanied children? We look to 279G2. And it says that once a child is placed in their custody, they're precluded by statute from ceding custody over the child to anyone. Correct, Your Honor. Unless it concludes that the proposed new custodian can provide physical and mental care for the child and would not pose a risk to the child. And that's what 8 U.S.C. 1232B3 says. Right, Your Honor. So they've got a statute that says, that supports what they say, too. And that's a – What we have is a statute – You say they didn't have any legal authority, but they've got a statute that says this. And it's right there on the – as a matter of fact, it's attached to your brief. That's right, Your Honor. What they have is a statute, which is part of the Immigration and Nationality Act, under the immigration laws of the United States, that specifies how ORR must care for children while they're in their custody. And, in fact, that same statute requires the child to be an unaccompanied alien child. 1232 only applies to unaccompanied alien children. They wouldn't have him unless he was an unaccompanied alien child. Exactly. And we contest – And the determination was made before he was turned over to them. It was made before it was turned over. It was made last year. It was made this year. You're saying that determination's wrong. They continue to determine that he's unaccompanied. And that is precisely what this court, under its own precedent, has the authority to review. Do we give Judge Kacharis any deference? No, Your Honor. Wait a minute. Let me finish the question. Sorry. I think the answer – I'm excited. Do we give him any deference in his determination that he was an unaccompanied alien child? He didn't make that determination. He declined to make that determination. Pardon? He declined to – He declined to make it. Okay. Because he said that that was a discretionary decision. All right. And it is not. It is a definitional statute. And as this court and the Supreme Court and the government concedes, interpretation of statute absolutely is reviewable on habeas. So whether you're looking at the time he was arrested, last year, today, he is not an unaccompanied alien child. And by pure statutory definition, they have no authority to detain him. And what if his mother is unfit? Suitability – Suitability. Does not appear anywhere in the definition. Suitability's in the statute. The caption that 1232B3 is safety and suitability assessments. That's the statutory term. Not in the definition of an unaccompanied alien child. Suitability determination as to what they do with him. While the child is in proceedings. They have him because there's been determination at that point. My point is 279G2, the definition of an unaccompanied child, does not – You're in a different title. One's a Title VIII, one's a Title VI. You're back in Title VI. Suitability has nothing to do with the unaccompanied status of a child. And I'm also, you know, we're here at the end, and we have yet to talk about the Constitution. Let me ask you one more question. I'm assuming your position would be that there was an error in the unaccompanied alien child determination, either by the Border Patrol or by HHS. And as you read the statutes, that error, in effect, is meaningless once the immigration proceedings are terminated. That's correct, Your Honor. So at that point, there is no statutory authority to hold the child. And HHS is required to release the child. End of story. Correct. Because continued detention is prohibited under the same immigration law through which OR is granted its detention authority at all. So what happens in this case where you appear to have a child who's fairly disturbed with no available parent who may or may not have actually murdered somebody at the age of 14, and we're just to let him go on the street? He has a natural parent, Your Honor, whose parental rights have not been diminished, even though shortly before he was detained, those courts were, those, her suitability was assessed by a state court of competent jurisdiction. Federal courts don't have the jurisdiction to make child custody decisions. Those since Henry Burris in 1890 have always belonged to the states. The Texas state court determined that she is suitable. And if something, we don't take kids from their parents by simply writing a letter to some federal agency and asking for them back. The Constitution requires hearing before a competent authority where R&B can present facts and his mother can have the matter decided not by an agency but by a court. Thank you, Your Honor. Thank you. This is an interesting case, and we appreciate counsel's good efforts from both sides. Thank you, Your Honor. We thank you very much. We're going to come down and greet counsel and then take a short break. This honorable court will take a brief recess.
judges: Robert B. King, G. Steven Agee, Henry F. Floyd